**KRIS A. MCLEAN**
**W. ADAM DUERK**
**Assistant U.S. Attorneys**
**U.S. Attorney's Office**
**P.O. Box 8329**
**Missoula, MT 59807**
**105 E. Pine St.**
**Missoula, MT 59802**
**Phone: (406) 542-8851**
**FAX: (406) 542-1476**
**Email: kris.mclean@usdoj.gov**

**ATTORNEY FOR PLAINTIFF**
**UNITED STATES OF AMERICA**

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
GREAT FALLS DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA,** Plaintiff, vs. **JONATHAN JAY EAGLEMAN,** Defendant. | CR 16 -06-GF-BMM **UNITED STATES' TRIAL BRIEF** |

Pursuant to this Court's order, the government files its trial brief in this matter.

## <u>ANTICIPATED PROOF</u>

The Chippewa Cree Tribal Water Resource Department (CCTWRD) operates the public water drinking supply system on the

1

Rocky Boy's Indian Reservation. At the time relevant to this matter, the defendant Jonathan Jay Eagleman was the Director of the CCTWRD.

On August 29, 2012 at 4:30 PM, Marcus Standing Rock and Henry Four Souls checked the Sangrey drinking water tanks in the normal course of their duties as employees of CCTWRD. Upon returning to inspect the same drinking water tanks the next morning, August 30, 2012, Four Souls observed the hatch of Sangrey tank #2 had been broken into and objects were thrown into the drinking water tank. Four Souls observed items including wooden boards, concrete, and animal feces in the drinking water tank.

The operator of a public water drinking system that learns of a compromised drinking water source in its system must immediately notify the United States Environmental Protection Agency (EPA). Timely notification is necessary to protect the public from potential health hazards whenever a drinking water source is compromised. Four Souls immediately notified Dustin White, Assistant Director of the Tribal Water Resources Department. Shortly after receiving this notification and inspecting the tank, White notified his boss, the defendant Eagleman. No one at the CCTWRD reported the incident to

the EPA.

Although the tank was immediately shut down by Four Souls following his discovery, the existing water in the system was not purged and remained in the system for approximately 25 days. The water remaining in the distribution system posed a potential threat to the public. It was estimated that 35 households on the Rocky Boy's Indian reservation received their drinking water from Sangrey water tank #2. None of the 35 households were notified that their water source was compromised as required by the Safe Drinking Water Act.

During the weekend of September 22nd, 2012, White learned that Misty Denny, a resident of the Rocky Boy's reservation, had posted information on Facebook exposing his and Eagleman's failure to report the compromised drinking water tank and protect the public from potentially tainted drinking water. White met with Eagleman and informed him that information regarding the failure to inform the public of the compromised drinking water was posted on Facebook.

Eagleman decided to report the compromised tank to the EPA on September 24, 2012 due to the Facebook posting. Eagleman also directed CCTWRD employees to make a police report of the tank break-

in to the tribal police department. During a conference call with EPA, drinking water program specialist, Barbara Burkland, and other public health officials on September 24, 2012, Eagleman falsely told the EPA that the Sangrey tank #2 had been checked on September 21st and observed to be secure. Eagleman explained falsely that when the tank was checked on the morning of September 24th, CCTWRD employees discovered it had been broken into and debris had been thrown inside by vandals. Eagleman assured those on the call that CCTWRD had secured the tank and shut if off from the rest of the system.

Burkland immediately notified the State of Montana Human Health and Services Department and ordered samples to be taken and rushed to the state laboratory for analysis in Helena. She also worked with Eagleman and his staff to prepare a public notice of possibly contaminated water and warning people to stop using water from Sangrey tank #2 until it could be determined safe to do so. This notice contained the same false representation by Eagleman that the tank had been found compromised on September 24, 2102.

On September 26, 2012 Burkland participated in another telephone conference call with Eagleman to discuss the results of the

water sample tests. Prior to this call, Burkland sent the test results showing water drawn from Sangrey tank #2 was positive for E. coli to Eagleman and other call participants. Despite the obvious public health risk, Eagleman and White maintained their false representations about the timing of the break-in to Sangrey tank #2 throughout the conference call. At no time did Eagleman or White explain to the participants on the conference call that the Sangrey drinking water tank #2 was actually compromised at a much earlier date-August 30, 2012.

Based on false information and omissions provided by Eagleman to the EPA, possible impacts to human health were not properly evaluated consistent with the time frame the public was exposed to tainted drinking water.

Dustin White previously testified under oath and confirmed his role and that of Eagleman as described above. White explained that he followed Eagleman's direction because he was afraid of losing his job. Eagleman participated in a tape recorded interview on February 27, 2013. During this interview, Eagleman initially minimized his knowledge and involvement in the false statements to EPA, but ultimately admitted that he misled the authorities during conference

calls on September 24th and 26th regarding when the Sangrey tank #2 had been compromised.

## STATUTORY AND REGULATORY BACKGROUND

**Safe Drinking Water Act (SDWA), 42 U.S.C. §§ 300f to 300j-26**.

Most Americans use drinking water delivered by one of the nation's 170,000-plus public water systems. In 1974 Congress passed the Safe Drinking Water Act (SDWA) to ensure that the water delivered by those systems is safe. EPA describes the functions of the SDWA as "source water protection, treatment, distribution system integrity, and public information."

EPA's regulations governing the SDWA are codified at 40 CFR Parts 141 and 142. Part 141 establishes water quality standards and testing requirements. Part 142 authorizes delegation of primary authority for implementing the program to respective states, so long as the state regulations are at least as stringent as the federal requirements. In Montana, EPA has primary enforcement responsibility for the SDWA's public water supply protection program on tribal lands, including the Rocky Boy's Reservation.

The CCTWRD is considered an "operator" of a "public water

system" on the Reservation under the SDWA. Public water systems that have at least 15 service connections or regularly serve at least 25 people per day and least 60 days per year or at least 25 year-round residents are subject to the requirements of the SDWA and its implementing regulations. The Reservation's system is surveyed every three years. In the last survey, the system, now named the "Rocky Boys Rural Water System," was found to have 477 total service connections, serving 444 year-round residents.

The SDWA regulations require operators of public water systems to provide a "Tier 1 public notice" as soon as practical but no later than 24 hours after the system learns of certain types of violations or situations, including the "unexpected loading of possible pathogens into the source water that significantly increases the potential for drinking water contamination." 40 CFR § 141.202, Table 1, paragraph 7. See also Tier 1 reporting requirements for the "detection of E. coli, enterococci, or coliphage in source water samples," and "other violations or situations with significant potential to have serious adverse effects on human health as a result of short-term exposure . . . ." 40 CFR § 141.202, Table 1, paragraphs 8-9.

As part of the Tier 1 public notice process, the public water system is required to initiate consultation with the "primacy agency" within the same 24 hour period, and comply with any additional public notification requirements that are established as a result of the consultation. 40 CFR § 141.202(b)(2-3).

## WITNESSES TO BE CALLED

The government anticipates calling approximately 10 witnesses at trial during its case-in-chief. First among them will be Mr. Henry Four Souls and Mr. Marcus Standing Rock. These men were employees of CCTWRD during the relevant time period and were the first to discover Sangrey tank #2 had been compromised on August 30, 2012 during their normal water system maintenance rounds. Both men should describe finding the heavy metal lid to the tank had been tampered with and wooden boards, cement and cow feces had been thrown into the water tank. Both men will describe immediately reporting the incident to their immediate supervisor, Dustin White and following his instructions to shut the tank off from the rest of the water system. Mr. Four Souls will additionally describe being directed, on September 24th, to report his observations of the tank break-in to a tribal police officer

so the officer could make an official report of the incident.

The government anticipates calling Mr. Dustin White as a witness at trial to testify concerning his actions in response to the Sangrey tank #2 break-in on August 30, 2012 and succeeding weeks. He will also testify to reporting the vandalism to his supervisor, Jay Eagleman, shortly after he learned of it himself. Mr. White should describe their decision to not report the compromised tank to EPA due to the press of other business, and their intent to clean the tank and bring it back on line without involving EPA. White should describe a very busy summer of work which prevented immediate attention to Sangrey tank #2 until late September, when someone posted information concerning the possible contamination of the tank on Facebook. White will describe telling Eagleman about the Facebook postings and Eagleman's related decision to notify EPA of the compromised tank. White will describe, among other facts, Eagleman's direction to falsely report to the EPA and others that the tank had been found compromised on September 24—not the true date of August 30, 2012. White will explain that he followed Eagleman's direction to make false statements to EPA because he feared he would lose his job if he told the truth.

The government anticipates calling Ms. Misty Denny as a witness at trial. Ms. Denny should describe the time frame, content and purpose of her Facebook postings concerning the break-in of the Sangrey tank #2.

The government anticipates calling Mr. Dustin Sunchild as a witness at trial. Mr. Sunchild should testify he was directed by Eagleman on September 24, 2012 to make a report of the water tank break-in to the tribal police department. He was also charged that same day with typing up statements of CCTWRD employees concerning their knowledge of the compromised water tank. These statements reflected, among other facts, that the compromise of Sangrey tank #2 was first observed on August 30, 2012—not September 24th as Eagleman was representing to EPA.

The government anticipates calling Mr. Duane Gopher as a witness at trial. Mr. Gopher should describe becoming very concerned about the false statements Eagleman was making to EPA's Barbara Burkland about the timing of the Sangrey tank #2 break-in. So concerned that he called Ms. Burkland and told her Eagleman was providing false information. Gopher supported his assertions by sending

the CCTWRD employee statements typed up by Sunchild to Burkland.

The government may call a representative of the Rocky Boy's tribal police department to provide foundation for the police report generated by former tribal officer Roland Nez concerning the break-in at Sangrey tank #2. If the parties can reach a stipulation on the admission of this exhibit, a witness will not be necessary.

The government will call EPA drinking water program specialist Barbara Burkland as a witness at trial. Ms. Burkland will generally describe the EPA safe drinking water program and its role at the Rocky Boy Reservation water system. Ms. Burkland will also testify to her actions upon learning the Sangrey tank #2 had been compromised. She will describe Eagleman's false statements to her about the timing of CCTWRD discovering the tank had been compromised. She will describe receiving the CCTWRD employee statements from Mr. Gopher and the actions she took in response. Finally, she will explain the public health risk involved in this situation and why accurate information about the date Sangrey tank #2 was compromised mattered, or was material, to the EPA.

The government may call State of Montana lab technician Russell

11

Leu as a witness at trial. Mr. Leu supervised or conducted the tests on the water samples collected from Sangrey tank #2 and participated in the conference call discussing those results with Eagleman and Mr. White on September 26th.

The government anticipates calling EPA-CID special agent Robert Marsden as a witness at trial. Agent Marsden will testify concerning the investigative steps he took in this matter including his interview of Eagleman on February 27, 2013. Agent Marsden will lay the foundation for admission of the audio recording of the interview.

## EVIDENCE TO BE OFFERED

The government anticipates offering approximately 25 exhibits including emails that document Eagleman's communications with EPA, the police report of the tank break-in, photographs of Sangrey tank #2, the statements Duane Gopher provided to Barbara Burkland, the public notice of contaminated water that forms the basis for count II, and the approximately one hour long audio recording of Eagleman's statement to Agent Marsden. The government will provide the marked exhibits it intends to offer to defense counsel prior to trial so stipulations can be made to foundation and admissibility.

## LEGAL ISSUES

The government does not anticipate any novel or complex legal issues arising during trial of this case.

## CONCLUSION

The government intends to move through its proof quickly and efficiently. Trial of this case should take 2 days.

DATED this 18th day of July, 2016.

> MICHAEL W. COTTER
> United States Attorney
>
> */s/ Kris A. McLean*
> KRIS A. MCLEAN
> Assistant U.S. Attorney
> Attorney for Plaintiff